KAREN P. HEWITT
United States Attorney
NICOLE ACTON JONES
Assistant U.S. Attorney
California State Bar No. 231929
United States Attorney's Office
880 Front Street, Room 6293
San Diego, California 92101-8893
Telephone: (619) 557-5482
E-mail: nicole.jones@usdoj.gov

Attorneys for Plaintiff
United States of America

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Criminal Case No. 08CR0305-BEN |
| Plaintiff, | **GOVERNMENT'S RESPONSE AND OPPOSITION TO DEFENDANT'S MOTIONS:** |
| v. | **(1) TO COMPEL DISCOVERY; AND**<br>**(2) FOR LEAVE TO FILE FURTHER MOTIONS** |
| JULIO ALCAZAR-MORETT, | **TOGETHER WITH STATEMENT OF FACTS AND MEMORANDUM OF POINTS AND AUTHORITIES** |
| Defendant. | Date:  April 1, 2008<br>Time:  2:00 p.m.<br>Court: The Hon. Roger T. Benitez |

COMES NOW the plaintiff, UNITED STATES OF AMERICA, by and through its counsel, Karen P. Hewitt, United States Attorney, and Nicole Acton Jones, Assistant United States Attorney, and hereby files its Response and Opposition to Defendant's Motions to Compel Discovery and For Leave to File Further Motions. This response is based upon the files and records of this case together with the attached statement of facts and memorandum of points and authorities.

//
//
//
//
//

I

## STATEMENT OF THE CASE

On February 6, 2008, a federal grand jury in the Southern District of California returned a one-count Indictment charging defendant Julio Cesar Alcazar-Morett ("Defendant") with Possession of Cocaine with Intent to Distribute, in violation of Title 21, United States Code, Section 841(a)(1). On February 7, 2008, Defendant was arraigned on the Indictment and entered a plea of not guilty.

II

## STATEMENT OF FACTS

During the week of January 13, 2008, a Drug Enforcement Administration (DEA) confidential source (CS) reported that a Mexican-based drug trafficker he/she knew only as "Hector" had been contacting the CS regarding the sale of methamphetamine. On January 18, 2008, Hector contacted the CS and stated he was going to deliver twelve kilograms of methamphetamine to San Diego. Hector further advised that the drugs would be transported by a courier and that the courier would contact the CS directly.

Around 6:15 p.m., on January 18, 2008, a male later identified as Defendant called the CS and stated he was on I-8 on his way to San Diego. The CS and Defendant arranged to meet off the Waring Road exit. At about 7:45 p.m., Defendant called the CS and stated he was at the Chevron gas station in a white Jeep Cherokee. Surveillance agents located the Jeep in the parking lot. The CS pulled up next to the Jeep, conversed briefly and then both vehicles drove to a hotel parking garage and parked. The CS advised agents via telephone that Defendant had stated he had "25" in a hidden compartment and he wanted to go someplace safer to take the drugs out of the car.

At about 8:35 p.m., agents detained Defendant. A search of the Jeep revealed a compartment under the rear cargo area containing 19 packages, one of which field-tested positive for cocaine. Agents also found a bag containing brand new tools and gloves. The agents used these tools to open the hidden compartment. Agents also seized two cellular telephones. A subsequent search of the vehicle uncovered a second compartment in the side rear quarter panel containing 6 more packages of cocaine for a total of 25 packages, with a gross weight of approximately 31.6 kilograms.

After being advised of his Miranda rights, Defendant elected to invoke his rights and all questioning ceased.

### III

### **DEFENDANT'S MOTIONS**

**A.     MOTION TO COMPEL DISCOVERY**

**1.     Discovery in this Matter is Current**

To date, the Government has provided Defendant with 70 pages of discovery 1 DVD and 2 CDs.  The discovery produced includes numerous reports of investigation on Form DEA-6, the DEA-7 lab reports,  copies of documents located in the vehicle and on Defendant's person, color photographs, and copies of consensual recordings.  Defense counsel has yet to schedule a viewing of Defendant's vehicle.  As of the date of this filing, the Government has received no reciprocal discovery.

**2.     The Government Has and Will Continue to Comply With Its Discovery Obligations**

The Government recognizes and acknowledges its obligation pursuant to Brady v. Maryland, 373 U.S. 83 (1963), the Jencks Act, and Rules 12 and 16 of the Federal Rules of Criminal Procedure. The Government has complied and will continue to comply with its discovery obligations going forward.

As to exculpatory information, the United States is aware of its obligations under Brady v. Maryland, 373 U.S. 83 (1963) and Giglio v. United States, 405 U.S. 150 (1972) and will comply. The United States will also produce any evidence of bias/motive or impeachment of any of its witnesses of which it becomes aware.  An inquiry pursuant to United States v. Henthorn, 931 F.2d 29 (9th Cir. 1991) will also be conducted.  In this case, the Government will ask the affected law enforcement agency to conduct the reviews and report their findings to the prosecutor assigned to the case.

The United States will provide a list of witnesses at the time the Government's Trial Memorandum is filed.  The grand jury transcript of any person who will testify at trial will also be

produced. The United States will produce any reports of experts that it intends to use in its case-in-chief at trial or such reports as may be material to the preparation of the defense.

The Government will furnish to the Defendant a copy of his prior criminal record, if any, that is within the Government's possession, custody or control if the attorney for the Government knows–or through due diligence could know–that the record exists. Furthermore, pursuant to Federal Rules of Evidence 404(b) and 609, the United States will provide Defendant with reasonable notice before trial of the general nature of the evidence of any extrinsic acts that it intends to use at trial. See FED. R. EVID. 404(b), advisory committee's note ("[T]he Committee opted for a generalized notice provision which requires the prosecution to appraise the defense of the general nature of the evidence of extrinsic acts. The Committee does not intend that the amendment will supercede other rules of admissibility or disclosure[.]"). If the Government intends to introduce TECS information as part of its case-in-chief at trial, discovery of the relevant TECS reports will be made at least by the time of the filing of its trial memorandum.

To the extent Defendant requests specific documents or types of documents, the Government will continue to disclose any and all discovery required by the relevant discovery rules. Accordingly, the Government respectfully requests that no orders compelling specific discovery by the United States be made at this time.

**3.    The Government Objects to Requests for Discovery That Go Beyond Any Statutory or Constitutional Disclosure Provision**

*a.    Defendant's Statements*

The United States recognizes its obligations under Fed. R. Crim. P. 16(a)(1)(A) to disclose "the substance of any relevant oral statement made by the defendant, before or after arrest, in response to interrogation by a person the defendant knew was a government agent if the government intends to use the statement in trial." The United States has turned over a number of investigative reports, including those which disclose the substance of Defendant's oral statements.If additional reports by United States' agents come to light, the United States will supplement its discovery.

The United States is not required under Fed. R. Crim. P. 16 to deliver oral statements, if any, made by a defendant to persons who are not United States' agents. Nor is the United States required

1  to produce oral statements, if any, voluntarily made (i.e. statements that were not made in response to
2  interrogation) by a defendant to United States' agents.  See United States v. Hoffman, 794 F.2d
3  1429, 1432 (9th Cir. 1986); United States v. Stoll, 726 F.2d 584, 687-88 (9th Cir. 1984).  Moreover,
4  the United States will not produce rebuttal evidence in advance of trial.  See United States v. Givens,
5  767 F.2d 574, 584 (9th Cir. 1984).
6      Defendant requests "the substance of any oral statement made to any person which goes to
7  any element of the offense."  Id. at 2.  The Government objects to this request because it is overbroad
8  and goes well beyond the scope of Rule 16.  This request is not supported by Defendant's cited
9  authority, United States v. Ible, 630 F.2d 389 (5th Cir. 1980), which concerned statements made
10 during the course of an interrogation by a Government agent.  As stated previously, the Government
11 has and will continue to comply with Rule 16 and Brady.
12     The United States also recognizes its obligations under Fed. R. Crim. P. 16(a)(1)(B) to
13 disclose relevant written or recorded statements by Defendant.  The Government has disclosed the
14 content of all relevant consensually monitored conversations between Defendant and government
15 agents or witnesses.  Defendant has also requested "a copy of any audio-taped recording of the
16 alleged deportation hearing." [Memorandum at 2.]  This is a drug case and the Government has not
17 alleged that Defendant has ever been deported, as such, deportation tapes, if they exist, are not
18 relevant to this case and will not be produced.
19     **b.     Rough Notes**
20     The United States will fully comply with its discovery obligations under the Jencks Act.  The
21 United States objects, however, to Defendant's premature request for the production of any rough
22 notes of United States' agents. [Memorandum at 2, 4, 8.]    For purposes of the Jencks Act, a
23 "statement" is (1) a written statement made by the witness and signed or otherwise adopted or
24 approved by him, (2) a substantially verbatim, contemporaneously recorded transcription of the
25 witness' oral statement, or (3) a statement by the witness before a grand jury. See 18 U.S.C. §
26 3500(e).  Notes of an interview only constitute statements discoverable under the Jencks Act if the
27 statements are adopted by the witness, as when the notes are read back to a witness to see whether or
28 not the government agent correctly understood what the witness said.  United States v. Boshell, 952

1  F.2d 1101, 1105 (9th Cir. 1991) (citing Goldberg v. United States, 425 U.S. 94, 98 (1976)).  In
2  addition, rough notes by a government agent "are not producible under the Jencks Act due to the
3  incomplete nature of the notes." United States v. Cedano-Arellano, 332 F.3d 568, 571 (9th Cir.
4  2004).  Moreover, the production of agents' notes related to Defendant's statements is not required
5  under Fed. R. Crim. P. 16 because the United States has "already provided defendant with copies of
6  the formal interview reports prepared therefrom." United States .v Griffin, 659 F.2d 932, 941 (9th
7  Cir. 1981).
8       In any case, production of this material need only occur after the witness making the Jencks
9  Act statements testifies on direct examination.  See United States v. Robertson, 15 F.3d 862, 873
10 (9th Cir. 1994).  Accordingly, the United States reserves the right to withhold Jencks Act statements
11 of any particular witness it deems necessary until after they testify.  The United States will, however,
12 take steps to preserve any rough notes that exist in this case.

### c. *Witness Statements*

14      Defendant requests production of "any witness statements at least twenty-four hours before
15 the witness testifies." [Memorandum at 5.]  As written, this request is overbroad because the request
16 covers all prior statements of Government witnesses without regard to the relevance of that
17 testimony to this case.  The Government will, as stated previously, comply with the Jencks Act.
18 Production of Jencks material need only occur *after* the witness making the Jencks Act statements
19 testifies on direct examination.  See United States v. Robertson, 15 F.3d 862, 873 (9th Cir. 1994).
20 Although the United States will likely produce most Jencks material in advance of trial, the United
21 States reserves the right to withhold Jencks Act statements of any particular witness it deems
22 necessary until after the witness testifies.
23      Defendant also requests any statements of "percipient witnesses or individuals who may have
24 information relevant to the case who the government does not intend to call as witnesses."
25 [Memorandum at 6.]   No competent authority is cited for this broad request and the Government is
26 aware of none.  As stated previously, the Government has and will continue to comply with its
27 obligations pursuant to Brady v. Maryland, 373 U.S. 83 (1963), the Jencks Act, and Rules 12 and 16
28 of the Federal Rules of Criminal Procedure.

### d. Impeachment Evidence

Regarding prospective government witnesses, the Government will provide the defendant with the following items prior to any such witness's trial testimony:

(1) The terms of all agreements (or any other inducements) it has made with government witnesses, if they are entered into;

(2) All relevant exculpatory evidence concerning the credibility or bias of government witnesses as mandated by law; and,

(3) Any record of prior criminal convictions (of which the Government is aware) that could be used to impeach a government witness.

Furthermore, any uncharged prior misconduct attributable to government witnesses, all promises made to and consideration given to such witnesses by the Government, and all threats of prosecution made to government witnesses by the Government will be disclosed if required by the doctrine of Brady v. Maryland, 373 U.S. 83 (1963) and Giglio v. United States, 450 U.S. 150 (1972). The Government will not provide information which "arguably could be helpful or useful to the defense" because it does not meet the Brady standard.

As stated above, the Government recognizes its obligation under Brady and Giglio to provide material evidence that could be used to impeach Government witnesses including material information related to perception, recollection, ability to communicate, or truth telling. The Government, however, objects to providing any evidence that a witness has *ever* used narcotics or other controlled substance, or has *ever* been an alcoholic because such information is not discoverable under Rule 16, Brady, Giglio, Henthorn, or any other Constitutional or statutory disclosure provision. [Memorandum at 5, 9.]

### e. Informants/Cooperating Witnesses

Defendant incorrectly asserts that the United States must disclose the identity and location of confidential informants used in a case. Rather, the Supreme Court held that disclosure of an informer's identity is required only where disclosure would be relevant to the defense or is essential to a fair determination of a cause. Rovario v. United States, 353 U.S. 53, 60-61 (1957). Moreover, in United States v. Jones, 612 F.2d 453 (9th Cir. 1979), the Ninth Circuit held:

> The trial court correctly ruled that the defense had no right to pretrial discovery of information regarding informants and prospective government witnesses under the Federal Rules of Criminal Procedure, the Jencks Act, 18 U.S.C. § 3500, or Brady v. Maryland, 373 U.S. 83 (1963).

Id. at 454. As such, the United States is not obligated to make such a disclosure at this point in the case. The United States will, however, make all required disclosures if an informant or confidential source testifies at trial in this matter.

### f.     Witness Lists

While the Government will supply a tentative witness list with its trial memorandum, it objects to providing addresses. See United States v. Steele, 785 F.2d 743, 750 (9th Cir. 1986); United States v. Sukumolachan, 610 F.2d 685, 688 (9th Cir. 1980); United States v. Conder, 423 F.2d 904, 910 (9th Cir. 1970) (addressing defendant's request for the addresses of actual Government witnesses). The Government also objects to any request that the United States provide a list of every witness to the crimes charged who will not be called as a United States witness. "There is no statutory basis for granting such broad requests," and a request for the names and addresses of witnesses who will not be called at trial "far exceed[s] the parameters of Rule 16(a)(1)(c)." United States v. Hsin-Yung, 97 F. Supp.2d 24, 36 (D. D.C. 2000) (quoting United States v. Boffa, 513 F. Supp. 444, 502 (D. Del. 1980)).

### g.     Personnel Records of Government Officers Involved in the Arrest

The United States has complied and will continue to comply with United States v. Henthorn, 931 F.2d 29 (9th Cir. 1991) by requesting that all federal agencies involved in the criminal investigation and prosecution review the personnel files of the federal law enforcement inspectors, officers, and special agents whom the United States intends to call at trial and disclose information favorable to the defense that meets the appropriate standard of materiality. See United States v. Booth, 309 F.3d 566, 574 (9th Cir. 2002) (citing United States v. Jennings, 960 F.2d 1488, 1489 (9th Cir. 1992)). If the materiality of incriminating information in the personnel files is in doubt, the information will be submitted to the Court for an in camera inspection and review.

1    Defendant's request that the specific prosecutor in this case review the personnel files is
2 unwarranted and unnecessary. [Memorandum at 11.] Henthorn expressly provides that it is the
3 "government," not the prosecutor, which must review the personnel files. Henthorn, 931 F.2d at 30-
4 31. Accordingly, the United States will utilize its typical practice for review of these files, which
5 involves requesting designated representatives of the relevant agencies to conduct the reviews. The
6 United States opposes the request for an order that the prosecutor personally review the personnel
7 files.
8    Defendant has not cited any competent authority that requires the United States to produce
9 "all citizen complaints and other related internal affairs documents." [Memorandum at 10.] The case
10 cited by Defendant, Pitchess v. Superior Court, 11 Cal.3d 531, 539 (1974) has been superceded by
11 statute. See Fagan v. Superior Court, 111 Cal. App.4th 607 (2003). Moreover, Pitchess involved a
12 criminal case in which a defendant who claimed to have acted in self-defense sought evidence as to
13 the police officers' use of force on previous occasions. Pitchess, 11 Cal. 3d at 534, 535. Pitchess is
14 simply inapplicable to Defendant's case.

### h.    *Training of Relevant Law Enforcement Officers*

16    The Government objects to providing to Defendant a copy of all policies, training
17 instructions, and manuals issued by all law enforcement agencies involved in this case.
18 [Memorandum at 11-12.] The requested policies, training instructions, and manuals are irrelevant
19 and do not fall within the scope of Rule 16, or any other statutory or Constitutional disclosure
20 provision. Even if one or more of the inspectors, officers, or special agents violated his or her own
21 administrative regulations, guidelines, or procedures, such violations would not result in the
22 exclusion of evidence if Defendant's Constitutional and statutory rights were not violated in this
23 case. United States v. Caceres, 440 U.S. 741, 744 (1979); United States v. Hinton, 222 F.3d 664 (9th
24 Cir. 2000).

### i.    *Performance Goals and Policy Awards*

26    The Government objects to providing Defendant with information regarding the agency
27 standards used for measuring, compensating, or reprimanding the conduct of all law enforcement
28 officers involved in this case. [Memorandum at 12.] The requested information regarding the agency

1 standards used for measuring, compensating, or reprimanding the conduct of the law enforcement
2 officers is irrelevant and does not fall within the scope of Rule 16, exculpatory evidence under
3 Brady, impeachment evidence under Giglio, or any other authority governing disclosure.

**B.     LEAVE TO FILE FURTHER MOTIONS**

The United States does not object to the granting of leave to allow Defendant to file further motions, as long as the order applies equally to both parties and additional motions are based on newly discovered evidence or discovery provided by the United States subsequent to the instant motion at issue.

**IV**

**CONCLUSION**

For the foregoing reasons, the Government respectfully requests that Defendant's motions be denied.

DATED:  March 25, 2008

Respectfully Submitted,

KAREN P. HEWITT
United States Attorney

/s/ *Nicole Acton Jones*
NICOLE ACTON JONES
Assistant U.S. Attorney

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Criminal Case No. 08CR0305-BEN |
| Plaintiff, | ) ) ) | |
| v. | ) ) | CERTIFICATE OF SERVICE |
| JULIO ALCAZAR-MORETT, | ) ) | |
| Defendant. | ) ) ) | |

IT IS HEREBY CERTIFIED THAT:

    I, NICOLE ACTON JONES, am a citizen of the United States and am at least eighteen years of age. My business address is 880 Front Street, Room 6293, San Diego, California 92101-8893.

    I am not a party to the above-entitled action. I have caused service of **GOVERNMENT'S RESPONSE AND OPPOSITION** on the following parties by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

    1. Daniel Casillas

    I hereby certify that I have caused to be mailed the foregoing, by the United States Postal Service, to the following non-ECF participants on this case:

    None

the last known address, at which place there is delivery service of mail from the United States Postal Service.

    I declare under penalty of perjury that the foregoing is true and correct.

    Executed on March 25, 2008.

                                                  /s/ *Nicole Acton Jones*
                                                NICOLE ACTON JONES
                                                Assistant U.S. Attorney